**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FREDDY VASQUEZ,**

      **Plaintiff,**

**-vs-**                  **Case No.  6:10-cv-1633-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument[1] on review of Defendant's denial of Plaintiff's applications for social security disability insurance benefits. For the reasons set forth herein, the decision of the Commissioner is **REVERSED and the matter is REMANDED under sentences four of 42 U.S.C. § 405(g)**, for further proceedings.

## Procedural History

Plaintiff filed an application for a period of disability with a protective filing date of September 16, 2003 (R. 94-98, 102).[2] The application was denied administratively, and Plaintiff sought and received a hearing before an Administrative Law Judge ("the ALJ") (R. 23-54). The ALJ issued an unfavorable decision on January 26, 2006 (R. 16-22). Plaintiff requested review from the Appeals Council, and submitted numerous additional documents (R. 8). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Thereafter, Plaintiff sought review by the United States District Court for the Middle District of Florida. On July 9, 2007,

---

[1] In view of the findings herein, the Court declines Plaintiff's request for oral argument.

[2] Pages 1-272 of the Certified Record are included in the Appendix filed in the original case: Case No. 6:06-cv-1282-DAB.

the undersigned United States Magistrate Judge issued a sentence four and sentence six remand under 42 U.S.C. Sec. 405(g), and returned the case to the Commissioner for additional consideration (R. 569-85).

Prior to remand, Plaintiff filed a second application for benefits (R. 350). On remand, a new hearing was held and, on May 29, 2008, the ALJ issued a decision finding Plaintiff was not disabled pursuant to 20 C.F.R. § 404.1520(g) (R. 295-311). The Appeals Council declined to assume jurisdiction over the case (R. 284-86), making the ALJ's 2008 decision the final decision of the Commissioner.

Plaintiff filed the instant Complaint for review[3] and the parties consented to the jurisdiction of the United States Magistrate Judge. The matter has been fully briefed and the final decision of the Commissioner is now ripe for review.

## Nature of Disability Claim

In the original application, Plaintiff alleged that he became disabled on June 17, 2003, due to residuals from a herniated disc at L4-5 and depression (R. 16). Since then, Plaintiff alleges additional impairments from a herniated disc at C5-6 with moderate stenosis and a disc protrusion at C6-7 with moderate stenosis (R. 189-90).

*Summary of Evidence Before the ALJ*

Plaintiff was 33 years old at the time of the ALJ's first decision (R. 27) and was 36 years old when the hearing decision was issued in May 2008 (R. 95), with a high school education and past relevant work experience as a security guard, computer room operator and maintenance worker (R. 106). Additionally, in 2006, Plaintiff worked as a courier for approximately three months (R. 924, 930-31, 942-43). Beginning in January 2007, Plaintiff worked part time (4 hours a day) in telephone

---

[3]As the prior decision was reversed and remanded under both sentence four and sentence six, the instant action should be consolidated with the prior case.

sales; he was laid off from this job in December 2007 (R. 924-26). The ALJ determined that his monthly earnings from these jobs did not rise to the level of substantial gainful activity for either year (R. 299).

Plaintiff's pertinent medical history is set forth in detail in the ALJ's decision and in the interests of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of treating providers within the pertinent time period, the record includes the opinions of state agency consultants, the forms and reports completed by Plaintiff with respect to this claim, as well as the testimony of Plaintiff at the hearings and the testimony of a Vocational Expert. By way of summary, the ALJ found Plaintiff had the impairments of an adjustment disorder, an intermittent explosive disorder, and degenerative disc disease of the lumbar spine and cervical spine (R. 299), and the record supports these uncontested findings. The ALJ determined that Plaintiff's impairments did not meet or medically equal one of the impairments listed in the Listing of Impairments (the Listings), 20 C.F.R. pt. 404, subpt. P, app. 1, and determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, "except he is limited to occasional climbing, balancing, stooping, kneeling, and crawling, and needs to have the option to alternate sitting and standing as needed" (R. 301). In addition, the ALJ determined that Plaintiff was "limited to performing simple, routine repetitive tasks." *Id.* The ALJ concluded that Plaintiff was unable to perform his past relevant work (R. 310), but citing the testimony of the Vocational Expert, made findings that there are other jobs existing in significant numbers in the national economy that Plaintiff was able to perform (R. 310-11). Therefore, the ALJ determined that Plaintiff was not disabled (R. 311).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.,* 357 F.3d at 1240 n. 8 (internal citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises three issues on review, asserting that: 1) the ALJ erred in determining that Plaintiff's impairments did not meet or medically equal Section 1.04 of the Listings; 2) the ALJ failed to properly weigh the opinion of the treating physician; and 3) the ALJ improperly evaluated Plaintiff's complaints of pain.

### The Listings

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments

which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

At step three of the evaluation, the ALJ determined that Plaintiff's impairments did not meet or equal an impairment in the Listings, specifically the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04, which provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

While acknowledging the degenerative disc disease of the lumbar spine, the ALJ found that the evidence did not satisfy this listing as "the record is devoid of evidence of nerve root compression characterized by motor loss (atrophy with associated muscle weakness or muscle weakness), spinal

arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation." (R. 300). Plaintiff contends that there is substantial evidence to support a finding that Plaintiff meets the Listing, and this finding is therefore incorrect.

There is no dispute that Plaintiff has a herniated disc at L4-5 with calcification impinging on the nerve root (R. 229-30) and findings of stenosis (R. 553). As pointed out by the Commissioner, however, Plaintiff does not identify evidence documenting distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss[4] or "pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and *resulting in inability to ambulate effectively*." According to the Listings:

> (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.,* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . .
> (2) *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches, or two canes.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00B2b.

Although Plaintiff uses a cane (which was provided by his physical therapist in 2004) (R. 698), there was no evidence that this device limited Plaintiff's functioning of *both* upper extremities. Moreover, there is no finding that the cane was, in fact, prescribed. *See* SSR 96-9p, available at 1996 WL 374185, 7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing,

---

[4] Dr. Basil Theodotou performed a neurosurgical examination of Plaintiff on March 6, 2006 and found "minimal degenerative disc disease at L4/5" and opined that he was not a candidate for surgery (R. 657-58).

-6-

and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)").

"To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. See 20 C.F.R. § 404.1525(a) (d)." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). The finding of the ALJ on this point is amply supported.[5]

### Treating Physician and Complaints of Pain

Plaintiff contends that the ALJ erred in failing to credit the opinion of his treating physician and in discrediting his allegations of pain. In order to evaluate these objections, a detailed review of the record is necessary.

As set forth in the prior decision of this Court and in the briefs, Plaintiff suffered a claimed work related injury while carrying hurricane shutters on April 14, 2003 (R. 139). A lumbar spine MRI taken on August 1, 2003, revealed a herniation on the left at L4-5 (R. 140). Plaintiff presented to the Veteran's Administration clinic for back pain and x-rays were taken on August 24, 2004 (R. 232). The x-rays revealed no abnormalities (R. 232). In October 2004, additional x-rays were taken, which were also normal (R. 231). On November 8, 2004, a CT lumbar spine with and without contrast was performed due to a history of chronic back pain and herniation, and it was noted that Plaintiff was using a cane (R. 230). Impression was bulging annulus at L4 L5 which had undergone calcification impinging on the nerve root as it exits on the left side. *Id.* A follow-up MRI confirmed the herniated disc at L4-L5 (R. 229).

On January 6, 2005, Plaintiff was seen at the VA by psychiatrist Raymond DeCastro, M.D. (R 224-225). He reported increased temper outbursts at his wife. Dr. DeCastro assessed dysthymic

---

[5]The Court notes that Plaintiff's first argument is focused solely on his lumbar spine impairment. It does not take into account residuals from his significant cervical spine disease,nor his mental health impairment.

-7-

disorder, intermittent explosive disorder and narcissistic personality traits. A GAF[6] score of 46 was assessed, and medications were adjusted.

On January 24, 2005, Plaintiff presented to Percival Moraleda, M.D., at the VA for an initial new primary care physician visit (R. 527). A cervical MRI dated February 7, 2005, showed a herniated disc at C5-6 with moderate stenosis with adjacent osteophytes and a disc protrusion at C6-7 with moderate stenosis, also with adjacent osteophytes. (R.189-190). "Chronic findings" were noted. Following review of the cervical MRI, Plaintiff was referred to pain management for spinal stenosis in the cervical spine (R. 213-214).

Plaintiff continued to complain of back and neck pain and continued to receive epidural injections and conservative care from the VA (R. 209-12). On April 20, 2005, Plaintiff again reported pain in his neck and lower back. (R 205). Percocet was prescribed. On June 2, 2005, Plaintiff reported additional pain in both knees along with continued pain in his neck and back. (R 201-202). He was placed on Morphine, with a prescription of Percocet for breakthrough pain (R 202).

On June 15, 2005, Plaintiff returned to his psychiatrist, who noted his "usual flat affect" but "his attitude is much improved and shows an adjustment to his unfortunate impairment" (R. 200). His GAF was assessed at 52 (R. 201).

Plaintiff continued to present to the clinic and Dr. Moraleda for narcotics to treat his chronic pain (R. 195-205). A note from his treating physician dated December 6, 2005 (R. 249-51) indicated that Plaintiff would receive a handicap parking permit. In a note dated January 17, 2006, with respect to a jury duty summons, Dr. Moraleda noted that Plaintiff "is known to have a condition that may make prolonged sitting, standing or maintaining certain positions a difficulty" (R. 248, 557). On January 31, 2006, Dr. Moraleda wrote the following:

---

[6]Global Assessment of Functioning.

-8-

> This note is written in behalf and at the request of the above patient who was seen at the Apollo Clinic today.
>
> Mr. Vasquez has been a patient at this clinic since August of 2004 when he presented for low back pain and neck pain. He has undergone testing which showed disc herniation in both the neck and lower back which may account for the symptoms he describe[s] (low back and neck pain). He has undergone physical therapy and epidural steroid injections, as well as other modalities, with no significant improvement. He is now being referred for possible surgical intervention. As a result of his condition, he has not been able to work throughout this time.

(R 246, 555).

Plaintiff continued to be treated at the VA throughout 2007 (R. 861-97).[7] On February 1, 2007, Plaintiff told Dr. Moraleda that he was not getting any benefit from the prescribed analgesics and, since he now had a co-pay, had decided not to use them, but was using the TENS unit for neck pain (R. 896). Plaintiff reported having numbness and tingling in his right upper extremity. An EMG of Plaintiff's right arm on February 26, 2007, was normal (R. 893-95).

On May 4, 2007, Plaintiff presented with worsening of his neck pain (R. 891). On examination, limited range of motion of neck in all directions and significant painful spasms were appreciated. Acute exacerbation of neck pain and spasms was assessed, and Plaintiff was given a note explaining "given his current condition and the medications he has been prescribed, Mr. Vasquez may not be able to work for the next 2-3 days." (R. 892). On May 8, 2007, Plaintiff called to report that he was still in "extreme pain" and asked for stronger pain medication (R. 889). He called again on May 9, 2007, advising that he "would take anything that would help with the pain." (R. 888). Percocet was prescribed (R. 887).

Plaintiff returned to Dr. Moraleda on May 23, 2007 (R. 883-884). At that visit, Plaintiff reported that he was working part time, and "the position at work and constant use of the mouse

---

[7]Plaintiff also continued his mental health treatment throughout 2006 and 2007. On October 28, 2006, Dr. Robert Jack Eardley performed a psychiatric evaluation of Plaintiff and assessed him with major depression (R. 659-62). Mental status reports from the VA in May and June 2007 record that Plaintiff was oriented to person, place, and time; had intact recall and retention; intact attention and concentration; and intact insight and judgment (R. 879, 885). Plaintiff's GAF score was listed as 55 (R. 880, 886).

-9-

promptly aggravates/exacerbates the pain." (R. 883). Dr. Moraleda assessed "Chronic neck and low back pain, (secondary) to disc herniation with resultant spinal stenosis, continuing disability" (R. 884) and placed Plaintiff on morphine and other drugs (R. 883-884). Dr. Moraleda opined: "patient remains very limited in his capability to do much even with the sedentary nature of his part-time job." *Id.*

On June 28, 2007, Dr. Basil Theodotou reported Plaintiff's lumbar MRI was unchanged from 2006 but his cervical MRI showed a worsening disk rupture at C5/6 and an identical disk rupture at C6/7 (R. 905). Plaintiff reported he was having difficulty using his right arm due to pain and weakness, but the doctor found no evidence of weakness on examination, although the range of motion in Plaintiff's neck was "severely curtailed." *Id.* Dr. Theodotou recommended Plaintiff undergo a cervical fusion.

In a letter dated October 1, 2007, treating physician Dr. Moraleda stated: "[D]ue to [Plaintiff's] medical condition, he has difficulty sitting, standing or maintaining the same position for prolonged periods of time (more than 30 minutes at a time). Given this, he is requesting accommodation for his purposes." (R. 859).

On December 6, 2007, Dr. Theodotou reported Plaintiff had declined surgery and stopped taking prescribed narcotics, as the doctor suggested, although he continued to use them occasionally (R. 898). Dr. Theodotou renewed his recommendation that Plaintiff undergo a cervical fusion. There is no evidence in the record that Plaintiff had undergone the surgery to date.

*Treating Physician*

Generally speaking, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's

impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Applied here, the ALJ found as follows:

> On January 31, 2006, Dr. Moraleda wrote a statement at the claimant's request for purposes of the claimant's disability case, in which he verified that the claimant had herniated discs in his neck and low back, impairments which "may account for the symptoms he describes." Dr. Moraleda went on to say that as a result of the claimant's condition, he had not been able to work since August 2004 []. Limited weight is given to Dr. Moraleda's statement because it is equivocal and appears to have been written to appease the claimant. The physician's statement lacks specific conclusions as to the claimant's functional abilities and limitations, as well as supporting rationale for those conclusions. (R. 307).

In the first instance, the Court finds no evidence to support a conclusion that the letter was offered "to appease" Plaintiff. "Appease" means to pacify or placate someone by acceding to their demands.[8] While it is true that Plaintiff *requested* an opinion letter from his physician, there is nothing to suggest that he dictated or otherwise demanded the particular opinion offered. Merely asking for a letter from your doctor does not justify the conclusion that the opinions offered by the doctor are coerced or untrue.

Moreover, the Court finds no support for a finding that the opinions of the treating physician are equivocal, lack specific conclusions or a supporting rationale. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986)). Applied here, the totality of the treatment notes, summarized above, are themselves statements reflecting judgments about Plaintiff's impairments, and give ample support for the ultimate opinion of Dr. Moraleda that Plaintiff cannot work a full time job.

Plaintiff treated with Dr. Moraleda since January 2005. Objective testing confirmed herniated disks in both lumbar spine and cervical spine, and examinations noted painful spasms, reduced range of motion, and resulting depression. The condition required significant pain medications and modalities and, as reflected in the treatment notes, all without significant improvement. Dr. Moraleda gave particular note to the limitations the conditions caused, noting that Plaintiff "is known to have a condition that may make prolonged sitting, standing or maintaining certain positions a difficulty"

---

[8]*See* http://www merriam-webster.com/dictionary/appease.

-12-

(R. 248, 557); "he has difficulty sitting, standing or maintaining the same position for prolonged periods of time (more than 30 minutes at a time)" (R. 859); and remained "very limited in his capability to do much even with the sedentary nature of his part-time job" (R. 884). Indeed, the ALJ accepted Dr. Moraleda's opinion that Plaintiff is limited in his ability to sit and stand by including a sit-stand option into the RFC (R. 307).

These are not mere conclusory statements and the opinions are amply supported by the objective medical evidence. As such, the ALJ's rationale for discrediting the conclusions of the long-standing treating provider is not supported. Remand for full consideration of the opinion, and all other opinions that meet the *Winschel* definition, is required.[9]

*Pain*

As for allegations of pain, when a claimant attempts to establish disability through his or her own testimony of subjective symptoms, the Eleventh Circuit follows a three-part test that requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged [symptom] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to

---

[9]Although Plaintiff contends that the proper remedy for this error is reversal, the Court notes that the failure to adequately evaluate all of the opinions of the treating providers no longer requires the Court to accept the opinion as true. *See Lawton v. Commissioner of Soc. Sec.,* 431 Fed. Appx. 830, 835 (11th Cir. 2011). As the Eleventh Circuit recently noted:

> We recognize that in *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986), this Court concluded that the Commissioner must accept as true a treating physician's opinion if the Commissioner ignored or failed to properly refute it. Our earlier precedent, however, remanded cases in which the ALJ failed to adequately explain the weight given doctors' opinions. *See, e.g., Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.1985); *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir.1982). To the extent *MacGregor* is inconsistent, under the prior panel precedent rule, we are bound by the holding of the first panel to address an issue of law, unless and until it is overruled by this Court sitting en banc or the Supreme Court. *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1986) (en banc). Thus, rather than accept the ignored treating doctor's opinion as true and remand for the award of benefits, we remand to the agency to determine in the first instance the proper weight to be afforded the treating doctor's opinion.

*Dempsey v. Commissioner of Social Sec.*, No. 11-11434, 2011 WL 6032952, *4 (11th Cir. Dec. 5, 2011) (as an unpublished opinion of the Eleventh Circuit, *Dempsey* constitutes persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.)

-13-

the alleged [symptom]." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "If proof of a disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote, supra*, 67 F.3d at 1562 (quotation omitted). Courts "have affirmed an ALJ's decision that a claimant's testimony as to the alleged levels of pain and symptoms he experienced was not credible where the allegations were inconsistent with activities of daily living, limited use of pain medication, and effectiveness of treatment." *Carter v. Commissioner of Social Sec.,* 2011 WL 292255, 2 (11th Cir. 2011) (unpublished), *citing Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, after evaluating the evidence and testimony, the ALJ concluded that, although Plaintiff has underlying impairments that could reasonably be expected to produce the symptoms alleged, his statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible (R. 302-03). As support for this, the ALJ pointed to evidence that the lumbar impairment was not disabling, Plaintiff's failure to have the cervical surgery recommended, and, importantly, to Plaintiff's part time work activity in 2006 and 2007 (R. 306-08). While the Court recognizes that credibility determinations are the province of the ALJ, the undisputed evidence indicates that Plaintiff's condition has worsened over time. Moreover, as summarized above, Plaintiff continued to suffer residuals from his impairments which interfered with his ability to perform his part

time work.[10] As remand is required to properly evaluate all of the medical opinions, the ALJ should look again at the totality of the combined effects of Plaintiff's impairments in evaluating his complaints of pain.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and was not made in accordance with proper legal standards. As the administrative decision was not made in accordance with proper legal standards, it is **REVERSED and the matter is REMANDED** under sentence four of 42 U.S.C. § 405(g), with instructions to fully evaluate, consider and explain the weight given to each of the medical opinions; more fully evaluate the complaints of pain; and conduct any additional proceedings deemed appropriate. **The Clerk is directed to enter judgment accordingly, and close the file.**

**DONE** and **ORDERED** in Orlando, Florida on February 6, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[10]Indeed, in addition to the medical evidence during 2007, on April 4, 2006, Plaintiff was referred to Brevard Achievement Center by Vocational Rehabilitation. (R 260-262). Following a six day work trial, Certified Vocational Evaluator Timothy Seaman opined that the Plaintiff did not appear capable of successfully completing a vocational program or working at a competitive level due to very limited stamina and pain tolerance (R 261). Subsequently, in a letter dated May 12, 2006, Vocational Rehabilitation Consultant William Anderson closed the Plaintiff's case with Vocational Rehabilitation stating,"[I]t has been determined that you are not eligible for vocational rehabilitation services because your *disability is too severe at this time* for rehabilitation services to result in an employment outcome" (R 269). Plaintiff was advised "to pursue benefits through the Social Security Administration. [emphasis added]" (R. 269).